IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM H. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-103 (RBW) |
| ) | |
| OFFICE OF THE DIRECTOR ) | |
| OF NATIONAL INTELLIGENCE, and ) | |
| OFFICE OF PERSONNEL ) | |
| MANAGEMENT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

William H. Henderson, the plaintiff in this civil matter, alleges that the defendants, the Office of the Director of National Intelligence ("ODNI") and the Office of Personnel Management ("OPM"), violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by improperly withholding information subject to disclosure under the FOIA. Complaint ("Compl.") ¶¶ 20, 25. Pending before the Court is the Defendants' Motion for Summary Judgment ("Defs.' Mot."), which asserts that the information at issue was properly withheld pursuant to 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mem.") at 1. After carefully considering the parties' submissions, the Court concludes for the reasons that follow that it must grant summary judgment to the defendants.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Statement of Material Facts Not in Dispute ("Defs.' Facts"); (2) the Declaration of Lisa M. Loss ("Loss Decl."); (3) the Declaration of Brian Prioletti ("Prioletti Decl."); (4) the plaintiff's

(continued . . .)

## I.   BACKGROUND

In December 2012, the OPM and the ODNI jointly issued a revised version of the Federal Investigative Standards ("FIS"), which "provide the standards for all security and suitability background investigations of individuals working for, or on behalf of, the executive branch or who seek to perform work for, or on behalf of, the executive branch and individuals with access to federally controlled facilities and information systems."  Defs.' Facts ¶ 2; Pl.'s Facts ¶ 2. "The FIS contain detailed procedures for conducting background investigations, including the specific types of records to be gathered and types of sources to be contacted or interviewed." Defs.' Facts ¶ 2; Pl.'s Facts ¶ 2.  The sole appendix to the FIS, the Expandable Focused Investigation Model ("EFI Model"), "sets forth the steps investigators are to pursue if derogatory or discrepant information develops during the course of an investigation."  Defs.' Facts ¶ 2; Pl.'s Facts ¶ 2.

The plaintiff, who heads a "personnel security consulting firm," Compl. ¶ 3, submitted FOIA requests to the OPM and the ODNI in July 2013 seeking from each defendant the disclosure of "the December 2012 version of the Federal Investigative Standards."  Defs.' Facts ¶ 1; Pl.'s Facts ¶ 1.  In September 2013, the OPM informed the plaintiff that it had determined that the FIS and EFI Model would be withheld in full under Exemption 7(E) of the FOIA, and the ODNI concurred with the OPM's determination.  Defs.' Facts ¶ 5; Pl.'s Facts ¶ 5.  In April 2014, after an administrative appeal of the defendants' initial decision to withhold the requested information, the OPM, with the ODNI's concurrence, partially released portions of the FIS but continued to withhold the EFI Model in its entirety.  See Defs.' Facts ¶¶ 7–8; Pl.'s Facts ¶¶ 7–8.

---

(continued . . . )
Memorandum in Opposition to [the] Defendants' Motion for Summary Judgment ("Opp'n"); (4) the plaintiff's Response to [the] Defendants' Statement of Material Facts Not in Dispute ("Pl.'s Facts"); and (5) the Defendants' Reply in Support of Their Motion for Summary Judgment ("Reply").

The defendants relied on Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6), and Exemption 7(E) to support the redactions to the FIS and withholding of the EFI Model.  Defs.' Facts ¶ 8; Pl.'s Facts ¶ 8.

That same month, the plaintiff lodged a second administrative appeal that challenged the defendants' reliance on Exemption 7(E) to withhold the requested information.  Defs.' Facts ¶ 9; Pl.'s Facts ¶ 9.  Several months after his second appeal, the plaintiff filed his complaint in this Court seeking to compel the defendants to disclose the balance of the information he requested.  Defs.' Facts ¶ 11; Pl.'s Facts ¶ 11.  After the complaint was filed and answered, the defendants provided a less redacted version of the FIS in May 2015, but continued to withhold the EFI Model in its entirety.  Defs.' Facts ¶¶ 11–12; Pl.'s Facts ¶¶ 11–12; see also Defs.' Mem., Exhibit ("Ex.") C (redacted version of FIS disclosed to the plaintiff in May 2015).  The defendants continued to rely on Exemption 7(E) to justify their redactions from the FIS and their continued withholding of the entire EFI Model.  Defs.' Facts ¶ 12; Pl.'s Facts ¶ 12.  Then, in July 2015, the defendants provided yet another redacted version of the FIS, which "removed certain redactions from the copy produced to [the p]laintiff on May 29, 2015, in order to be consistent with the copy provided to [the p]laintiff on April 1, 2014."  Defs.' Facts ¶ 14; Pl.'s Facts ¶ 14.  The defendants continue to justify their redactions to the FIS and withholding of the EFI Model based on Exemption 7(E).  See Defs.' Facts ¶ 15; Pl.'s Facts ¶ 15; see also Defs.' Mem., Ex. E (redacted version of FIS disclosed to the plaintiff in July 2015).

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In resolving a motion for summary judgment, all reasonable

inferences that may be gleaned from the facts before the court must be construed in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and may do so by "citing to particular parts of materials in the record, including . . . affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

Courts review an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B), and "FOIA cases typically and appropriately are decided on motions for summary judgment," ViroPharma, Inc. v. Dep't of Health & Human Servs., 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted).  In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested has either been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).  And "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)" to comply with its requirements under the FOIA.  Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1167 (D.C. Cir. 2011) (quoting Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 57 (D.C. Cir. 2003)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-

conclusory." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). The affidavits or declarations should "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [ ] not [be] controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. U.S. Dep't of Justice, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)).

### III.   ANALYSIS

#### A. The "Law Enforcement Purposes" Threshold Requirement Under 5 U.S.C. § 552(b)(7)

Pursuant to Exemption 7(E), an agency may withhold:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E) (emphasis added).

The plaintiff challenges the applicability of Exemption 7(E) to records compiled for civil law enforcement purposes, arguing that the District of Columbia Circuit's decision in Morley v. v. CIA, 508 F.3d 1108 (D.C. Cir. 2007), which the plaintiff concedes controls the outcome of this case, was improperly based on the Circuit's decades-old recognition in Pratt v. Webster, 673

5

F.2d 408, 420 n.32 (D.C. Cir. 1982), that Exemption 7(E) extends to records compiled for both civil and criminal law enforcement purposes. See Opp'n at 4–5. According to the plaintiff, certain post-Pratt amendments to Exemption 7(E) undermine this Circuit's continued application of that exemption to civil investigations. See id. at 5 (arguing that this Circuit has not had "the opportunity to consider whether the Pratt justification for extending FOIA Exemption 7(E) to civil investigations was still valid in light of those amendments to [the] FOIA").

The Court disagrees with the plaintiff's contention that Exemption 7(E) should be limited in scope to records compiled for criminal purposes only. As this Circuit has recognized, "[t]he term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing Tax Analysts v. Internal Revenue Serv., 294 F.3d 71, 77 (D.C. Cir. 2002)). If Congress intended to limit Exemption 7(E)'s application to records compiled for criminal purposes only, it certainly knew how to do so. See, e.g., 5 U.S.C. § 552(b)(7)(D) (referring to records "compiled by a criminal law enforcement authority in the course of a criminal investigation"). In 1986, Congress broadened the exemption by making it clear that Exemption 7 applies not merely to documents compiled in the course of an investigation, see 132 Cong. Rec. H9466 (daily ed. Oct. 8, 1986) (1986 amendments to the FOIA "would broaden the scope of the exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory"), but also to techniques, procedures, or guidelines compiled for a law enforcement purpose, regardless of whether they are investigative or non-investigative, see id. (addition of "guidelines" to Exemption 7(E), "like the deletion of 'investigatory' from the exemption's threshold language, is intended to make clear that 'techniques and procedures for law enforcement investigations and

prosecutions' can be protected, regardless of whether they are 'investigative' or 'non-investigative'"). The Court is unaware of any indication that, after Pratt's recognition of the applicability of Exemption 7 to records compiled for both civil and criminal law enforcement purposes, Congress acted to reject this understanding of Exemption 7's scope.

Accordingly, in Mittleman v. Office of Pers. Mgmt., this Circuit applied Exemption 7 to records compiled for the purpose of conducting background investigations of individuals seeking employment or contracts with the federal government, concluding that records or information pertaining to background investigations meet the exemption's threshold requirement that the records be "compiled for law enforcement purposes." 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam) (recognizing that "[e]nforcement of the law fairly includes not merely the detection and punishment of violations of law but their prevention" and holding that records of the OPM's investigation of the plaintiff's background were "compiled for law enforcement purposes" under 5 U.S.C. § 552(b)(7) (alteration in original) (quoting Miller v. United States, 630 F. Supp. 347, 349 (E.D.N.Y. 1986))). And, in Morley, the Circuit reaffirmed that "[b]ackground investigations conducted to assess an applicant's qualification, such as the [Central Intelligence Agency's] 'clearance and investigatory processes,' inherently relate to law enforcement." 508 F.3d at 1129.

The FIS and EFI Model at issue here "were compiled . . . to provide consistent background investigation standards for investigations of individuals working for, or on behalf of, the executive branch or who seek to perform work for, or on behalf of, the executive branch, as well as for individuals who would access federally controlled facilities and information systems." Loss Decl. ¶ 14; see also Prioletti Decl. ¶ 19 ("The FIS are guidelines that govern national security and suitability investigations for all individuals working for or on behalf of the Executive Branch of the Federal Government."). Under this Circuit's precedents in Morley and

Mittleman, the records withheld by the defendant here were undoubtedly compiled for law enforcement purposes. And, as the plaintiff concedes this to be the case, see Opp'n at 3, 4 (conceding that "the binding case law from the D.C. Circuit is memorialized in" Morley and recognizing "the limits of this Court's authority to rule contrary to binding case law"), the plaintiff's arguments with regard to the threshold requirement of Exemption 7 must fail.

Even had the plaintiff not conceded this point, the Court would nevertheless conclude that the defendant has established that the FIS and EFI Model meet Exemption 7's threshold requirement. "To show that . . . documents were 'compiled for law enforcement purposes,' the [agency] need only 'establish a rational nexus between the investigation and one of the agencies' law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting Campbell v. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998)). Here, the FIS and EFI Model set forth the process used by the defendants in their efforts to prevent bad actors from obtaining access to sensitive government information, technologies, and facilities. See Loss Decl. ¶ 21 ("The OPM's personnel security and suitability investigations . . . ensure that applicants and other persons subject to investigation . . . have not broken the law or engaged in other conduct making them unsuitable for appointment or ineligible for a clearance . . . ."); Prioletti Decl. ¶¶ 2, 28–29 (explaining the ODNI's responsibility over "policies and procedures governing investigations and adjudications for eligibility for access to classified information and eligibility to hold a sensitive position" and stating that release of the withheld information from the FIS and the EFI Model "would jeopardize the [g]overnment's ability to validate [an] individual's eligibility for a security clearance, which could result in the unauthorized disclosure of classified information by individuals unsuitable for national security clearances"). The

defendants further state that the information withheld from the FIS, and the EFI Model, which expands on the FIS, constitutes information that sheds light on the defendants' process for conducting background investigations, and that the release of this information "could cause an individual, foreign intelligence organization, or terrorist organization seeking to circumvent the investigation[] and obtain a favorable adjudication for a particular individual" to supply false data that would be difficult to detect or to omit information that would evade further scrutiny. See generally Loss Decl. ¶¶ 25–36; Prioletti Decl. ¶¶ 26–32. The defendants have amply demonstrated, as set forth in Blackwell, 646 F.3d at 40, a "rational nexus" between the background investigation techniques and each agency's responsibility to prevent potential bad actors from obtaining security clearances and access to government technologies and facilities, and a "connection" between potential bad actors and the risk of a breach of security. The threshold question now answered, the Court turns to whether the defendants have carried their burden of demonstrating that the withheld records or information rise to the level of the harm articulated in Exemption 7(E).

### B. Application of Exemption 7(E)

Exemption 7(E) protects from disclosure information contained in law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption (7)(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" Blackwell, 646 F.3d at

42 (alteration in original) (quoting Mayer Brown LLP v. Internal Revenue Serv., 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  Exemption 7(E)

> looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

Mayer Brown, 562 F.3d at 1193.

The Loss and Prioletti Declarations provide a lengthy explanation of the contents of the FIS and EFI Model and the risk of harm should the information withheld from these records be disclosed.  See generally Loss Decl. ¶¶ 14–36; Prioletti Decl. ¶¶ 19–32.  The "FIS were designed to supersede all previously issued investigative standards and take into consideration the counterintelligence, security, and suitability concerns" of the federal government.  Loss Decl. ¶ 15.  Whereas pre-2012 "standards and guidance were broad and afforded agencies significant discretion in interpretation," the 2012 FIS "were designed to promote reciprocity to the extent possible and therefore required more granular instruction for every tier of investigation."  Id.  Consistent with this objective, the FIS detail "the specific types of records to be gathered and the types of sources to be contacted or interviewed," "specific guidance with respect to how far back in time certain types of records should be searched[,] and whether additional efforts are required should outreach to sources be unsuccessful."  Id. ¶ 16.  The FIS thus "provide insight into the varying levels of effort, and the types of information required, to complete a satisfactory investigation," id., and the EFI Model "provides insight into what types of information would generate additional scrutiny during an investigation[,] and what particular investigative steps would be taken when the need for additional scrutiny is triggered," id. ¶ 17.  "Complete access to the FIS (and EFI Model) would therefore provide direction to a person attempting to manipulate

the investigative process, by providing insight into the likelihood of detection were he or she to conceal, misrepresent, or falsify certain required information." Id. ¶ 19. "The very purpose of the [FIS] and EFI Model—to ensure that unsuitable individuals do not gain access to sensitive government positions, facilities, technologies, clearances, or information—would be defeated if they were disclosed to the public." Id. Consistent with the defendants' concerns regarding the sensitivity of the information in the revised FIS and EFI Model, the ODNI designated them as "[For Official Use Only] . . . to permit limited distribution to [intelligence community] security contractors who perform background security investigations on behalf of the [g]overnment and are required to sign a nondisclosure agreement." Prioletti Decl. ¶ 25. The Court finds the defendants' explanation more than sufficient to establish "the chance of a reasonably expected risk" should the withheld information be disclosed. Mayer Brown, 562 F.3d at 1193.

As previously noted, the plaintiff expressly concedes that the outcome of this case is settled by Morley, Opp'n at 3, which unequivocally stated that "[i]t is self-evident that information revealing security clearance procedures could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates," 508 F.3d at 1128–29. And, through the detailed description contained in the Loss and Prioletti Declarations, the defendants have demonstrated "logically how the release of the requested information might create a risk of circumvention of the law." Blackwell, 646 F.3d at 42 (quoting Mayer Brown, 562 F.3d at 1193). The Court therefore concludes that the defendants properly withheld information from the FIS and the EFI Model pursuant to Exemption 7(E).

### C. Segregability

Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5

U.S.C. § 552(b); Roth, 642 F.3d at 1167 ("even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)"). Thus, "it has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)). The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010). Nevertheless, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The defendants state that they conducted a line-by-line review of the FIS on two occasions and released portions of the FIS deemed to be non-exempt. Prioletti Decl. ¶ 33; see also Defs.' Mem., Exs. C & E (redacted versions of the FIS disclosed to the plaintiff in May and July 2015); Defs.' Facts ¶ 12 (describing May 2015 release of documents to the plaintiff). Additionally, the defendants explain that the 29-page EFI Model, the sole appendix to the FIS that expands on the guidelines contained in the FIS, is in the form of a chart describing "red flags" that trigger further investigation and setting forth those advanced investigatory steps. See Prioletti Decl. ¶¶ 31, 34. "The chart contains detailed instructions and criteria . . . that are so prevalent throughout the document that potentially non-exempt words or phrases are inextricably intertwined with exempt material throughout the documents," which would "result in the release of an unintelligible document." Id. ¶ 34. The defendants also state that "information in the EFI

Model that could potentially be non-exempt if released alone should nonetheless be withheld" because this information, "taking into consideration the layout of the chart," could allow potential bad actors "to surmise the trigger points and expanded procedures" detailed in the EFI Model. Id.

Based upon these representations, the Court finds that the defendants have satisfied their segregability obligation under the FOIA. See, e.g., Blackwell, 680 F. Supp. 2d at 96 (finding the agency's segregability requirement satisfied where the agency's declaration explained that "documents were processed to achieve maximum disclosure" and "further disclosure or attempt to describe information withheld would identify information protected by one of the FOIA exemptions"); see also Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973) (agency must state "in detail which portions of the document are disclosable and which are allegedly exempt"). And, although the "quantum of evidence" required to rebut the presumption that the defendants "complied with the obligation to disclose reasonably segregable material" is not clear, Sussman, 494 F.3d at 1117 (citations omitted), the Court is not persuaded by the plaintiff's contention that, merely because the defendants released additional information from the FIS after their initial decision to withhold the entire document, Opp'n at 9–10, the defendants' representations regarding segregability at this juncture are insufficient, see Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (agency's subsequent disclosure of previously withheld information did not demonstrate that agency was improperly withholding information). The Court therefore concludes that the defendants have disclosed all reasonably segregable information.

### D. In Camera Review

The plaintiff asserts that the Court should conduct an in camera review of the withheld portions of the FIS and EFI Model to determine whether the defendants properly withheld these

13

materials under Exemption 7(E). Opp'n at 5–7. The District of Columbia Circuit "has interpreted [the FOIA] to give district court judges broad discretion in determining whether in camera review is appropriate." Armstrong v. Exec. Office of the President, 97 F.3d 575, 577–78 (D.C. Cir. 1996) (citations omitted); see also 5 U.S.C. § 552(a)(4)(B) (providing that the district court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld . . . ." (emphasis added)). Thus, "[if] a district court believes that in camera inspection is unnecessary 'to make a responsible de novo determination on the claims of exemption, it acts within its broad discretion by declining to conduct such a review.'" Juarez v. Dep't of Justice, 518 F.3d 54, 60 (D.C. Cir. 2008) (quoting Carter v. Dep't of Commerce, 830 F.2d 388, 392 (D.C. Cir. 1987)). Moreover, this Circuit has also stated that "in camera review is a 'last resort' to be used only when the affidavits are insufficient for a responsible de novo decision." Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (citing Weissman v. CIA, 565 F.2d 692, 697 (D.C. Cir. 1977)).

Here, as the Court has already found, the Loss and Prioletti Declarations explain in sufficient detail the contents of the information withheld under Exemption 7(E) and the reasons why disclosure would risk circumvention of the law. See Loss Decl. ¶¶ 25–33 (describing the contents of, and setting forth the reasons for withholding, specific subsections of the FIS and the EFI Model); Prioletti Decl. ¶¶ 29–32 (same). The defendants also provided the redacted FIS that were disclosed to the plaintiff, Defs.' Mem., Exs. C & E, and the Court is able to compare each of the explanations made in the defendants' declarations with the specific subparagraph withheld such that the withholdings can be assessed in context. Based on its review, the Court is able to conclude that the defendants' declarations "sufficiently describe the documents and set forth proper reasons for invoking" Exemption 7(E). Juarez, 518 F.3d at 60.

In addition to the sufficiency of the defendants' declarations, "if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." Hayden, 608 F.2d at 1387. The plaintiff's chief complaint in this regard is that the defendants disclosed additional information from the FIS after their initial decision to withhold the document in its entirety, and that some of their subsequent disclosures contained inconsistent redactions. See Opp'n at 6–8. The Court does not discern from these events any evidence of bad faith on the part of the defendants, nor has the plaintiff convincingly raised any such concern. Contrary to demonstrating bad faith, the Court views the defendants' subsequent productions of additional information as an effort to balance their disclosure obligations under the FOIA, by disclosing as much information as possible, with the risks identified in their declarations. For these reasons, the Court, in its discretion, denies the plaintiff's request for an in camera review of the records or information withheld by the defendants.

## CONCLUSION

For the foregoing reasons, the Court concludes that the defendants submitted sufficient factual detail to establish that they properly withheld information under FOIA Exemption 7(E) and released all reasonably segregable information not otherwise exempt from disclosure. Accordingly, the Court must grant the defendants' motion for summary judgment.[2]

**SO ORDERED** this 25th day of February, 2016.

REGGIE B. WALTON
United States District Judge

---

[2] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.